Rel: July 31, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2026

_____

### CL-2025-1033

_____

### Roderick Harris

### v.

### Lineage Logistics

### Appeal from Etowah Circuit Court
### (CV-22-900352)

EDWARDS, Judge.

In September 2022, Roderick Harris filed in the Etowah Circuit Court ("the trial court") a complaint against his former employer, Lineage Logistics, seeking an award of benefits under the Alabama Workers' Compensation Act ("the Act"), Ala. Code 1975, § 25-5-1 et seq., based on

his exposure to extreme cold that resulted in his having certain of his fingers amputated. Harris amended his complaint three times, first to request that his injuries be compensated outside the schedule for injuries to specified parts of the body set forth in Ala. Code 1975, § 25-5-57(a)(3), and a second and a third time to request benefits based on alleged injuries to his cervical spine.[1] The parties entered into certain factual stipulations, including that Harris had suffered injuries in the course of his employment that had resulted in the partial amputation of his right index and middle fingers and of his left index finger.

After a trial held in July 2025, the trial court entered a judgment in favor of Harris. In its judgment, the trial court indicated that Harris had proven that his injuries had resulted in his permanent total disability but that, based on Norandal U.S.A., Inc. v. Graben, 133 So. 3d 386 (Ala. Civ. App. 2021), and Advantage Sales of Alabama, Inc. v. Clemons, 36 So. 3d 517 (Ala. Civ. App. 2008), Harris was limited to receive only those benefits provided for injuries to his fingers, which are scheduled members under § 25-5-57(a)(3)a.2. & a.3. Harris filed a timely

---

[1]Harris appears to have abandoned any claim to benefits arising from any injury to, or condition of, his cervical spine.

notice of appeal. Harris requested oral argument, which this court held on June 22, 2026.

The sole argument that Harris makes on appeal is that he was wrongfully restricted to compensation for the injuries to his fingers as scheduled members under § 25-5-57(a)(3), instead of being compensated based on his vocational disability.[2] He first complains that the Act has been improperly construed to entitle an injured employee to the award of benefits specified for only a permanent partial disability recoverable under § 25-5-57(a)(3), despite the fact that permanent total disability is separately defined in § 25-5-57(a)(4). Harris contends that, pursuant to the language of § 25-5-57(a)(1), which states, in pertinent part, that, "at the time ... a temporary total disability shall become permanent, compensation for the continued total disability shall be governed by (a)(4)

_____

[2]Notably, Harris does not argue that he is entitled to benefits based on the extension of his injury to other parts of his body, see Ex parte Drummond, 837 So. 2d 831 (Ala. 2002) (quoting 4 Lex K. Larson, Larson's Workers' Compensation Law § 87.02 (2001)) (restating the exception permitting an employee to be compensated outside the schedule for scheduled-member injuries to those occasions when "'the effects of the loss of the member extend to other parts of the body and interfere with their efficiency'"), or based on severe and debilitating pain. See Norandal U.S.A., Inc. v. Graben, 18 So. 3d 405, 416 (Ala. Civ. App. 2009) (setting out the "pain exception" to the limitation of recovery to the benefits set out in the schedule).

of this section with respect to permanent total disability," a trial court considering a claim that an employee is permanently and totally disabled should first determine whether that employee's injury resulted in a permanent total disability under § 25-5-27(a)(4) and then, if it did not, consider whether the injury is to a scheduled member under § 25-5-57(a)(3). He argues that looking first to determine whether the injury is to a scheduled member is not supported by the Act, which, he says, clearly treats permanent partial disability and permanent total disability differently in different subsections of the Act.

We need not discuss the evidence presented to the trial court to determine that we may not reverse the trial court's judgment. Harris's argument is solely legal and, in essence, requests that this court ignore the pronouncements of our supreme court on this particular issue. We are bound by the opinions of our supreme court. Ala. Code 1975, § 12-3-16.

As this court explained in Clemons, 36 So. 3d at 527-28:

"Our supreme court's decisions in [Leach Manufacturing Co. v.] Puckett[, 284 Ala. 209, 224 So. 2d 242 (1969),] and [Ex parte] Drummond [Co., 837 So. 2d 831 (Ala. 2002),] dictate that the trial court must first determine whether the permanent injury to the scheduled member extends to and interferes with other nonscheduled parts of the employee's

4

body. If the injury to the scheduled member does not extend to other parts of the employee's body, then the injury is classified as a matter of law as a permanent partial disability and the schedule set forth in [Ala. Code 1975,] § 25-5-57(a)(3)[,] governs the amount of compensation due the employee without consideration of any vocational disability."

In Leach Manufacturing Co. v. Puckett, 284 Ala. 209, 224 So. 2d 242 (1969), our supreme court construed the predecessor to the Act, the Alabama Workmens' Compensation Act, codified at Code of Alabama 1940 (Recomp.1958), Tit. 26, § 253 et seq., to limit the recovery for any injury to a scheduled member to the benefits set forth in the schedule. Our supreme court explained that, pursuant to the language of the former Workmens' Compensation Act,

"where there is an injury resulting in the loss of a member, or the loss of the use of a member, so as to invoke payment of compensation as provided in [the schedule], and where this is not accompanied by other physical disability (of the body), the payment of the specified sum is intended to fully compensate the injured employee for the injury sustained. This would certainly include loss of earning capacity or inability to secure employment. True, in many cases the amount awarded (allowed) seems insufficient or inadequate, but this is a matter entirely within the function of our legislature."

Puckett, 284 Ala. at 214, 224 So. 2d at 247.

In Ex parte Drummond Co., 837 So. 2d 831 (Ala. 2002), our supreme court was concerned with whether this court had improperly expanded

5

the test set forth in Bell v. Driskill, 282 Ala. 640, 646, 213 So. 2d 806, 811 (1968), which permitted an award of compensation outside the schedule "if the effect of [an injury to a scheduled member] extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member." The supreme court determined that this court had, indeed, done so in part by relying on evidence of extreme vocational disability to award compensation outside the schedule in such cases as U.S. Steel v. Nelson, 634 So. 2d 134 (Ala. Civ. App. 1993); Smith v. Capps, 414 So. 2d 102 (Ala. Civ. App. 1982); and Dale Motels, Inc. v. Crittenden, 50 Ala. App. 251, 278 So. 2d 370 (1973). Thus, our supreme court overruled those cases (and others) and modified the test set out in Bell to a more limited test: "'if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'" Ex parte Drummond, 837 So. 2d at 834 (quoting 4 Lex K. Larson, Larson's Workers' Compensation Law § 87.02 (2001)). In doing so, our supreme court reaffirmed the pronouncement in Puckett that the amount provided in the schedule for the loss of use or

loss of a member "'is intended to fully compensate the injured employee for the injury sustained.'" Id. at 835 (quoting Puckett, 284 Ala. at 214, 224 So. 2d at 247).

To the extent that Harris argues that the addition of the phrase "except as otherwise provided herein" to § 25-5-57(a)(3)d. also supports the conclusion that a trial court should first determine whether an employee's injury resulted in permanent total disability and then, if it did not, consider whether the injury is to a scheduled member, we disagree. Currently § 25-5-57(a)(3)d. provides, in pertinent part: "The permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation specified in the schedule for such injury shall be in lieu of all other compensation, except as otherwise provided herein." Section 25-5-57(a)(3)d. was amended to add the phrase "except as otherwise provided herein" in 1984, well before our supreme court decided Ex parte Drummond. We cannot presume that our supreme court disregarded that language when considering the issue presented in Ex parte Drummond.

The argument Harris makes -- that he should be compensated for a permanent total disability resulting from the partial loss of his fingers and not restricted to compensation under the schedule for the partial loss of those fingers -- was rejected by this court in <u>Clemons</u> based on our supreme court's declarations in <u>Ex parte Drummond</u> and in <u>Puckett</u> that the amount provided in the schedule for the loss of use or loss of a member "'is intended to fully compensate the injured employee for the injury sustained.'" <u>Ex parte Drummond</u>, 837 So. 2d at 835 (quoting <u>Puckett</u>, 284 Ala. at 214, 224 So. 2d at 247). Because we are bound by the opinions of our supreme court, we affirm the judgment of the trial court.

AFFIRMED.

Moore, P.J., and Hanson, Fridy, and Bowden, JJ., concur.